Anne M. Bevington (SBN 111320)
Tino X. Do (SBN 221346)
Allan D. Shuldiner (SBN 252259)
SALTZMAN & JOHNSON LAW CORPORATION
1141 Harbor Bay Parkway, Suite 100
Alameda, CA 94502
Telephone: (510) 906-4710
Email: abevington@sjlawcorp.com
Email: tdo@sjlawcorp.com
Email: ashuldiner@sjlawcorp.com

Attorneys for Plaintiffs Pension Plan for
Pension Trust Fund for Operating Engineers, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; JAMES E. MURRAY and DAN REDING, as Trustees,<br><br>            Plaintiffs,<br><br>vs.<br><br>TRICOUNTY EXCAVATION, INC., a California corporation; TRI COUNTY GRADING & PAVING, INC., a California corporation,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT TO MODIFY OR VACATE ARBITRATOR'S AWARD**<br><br>**[29 U.S.C. §1401(b) and 29 U.S.C. §1451]** |

Plaintiffs PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS, JAMES E. MURRAY and DAN REDING, as Trustees (collectively, "Plaintiffs" or the "Plan") bring this action in accordance with 29 U.S.C. §§1401(b)(2) and 1451, seeking to vacate or modify an arbitration award issued on September 17, 2019, based on the following allegations:

### NATURE OF THE ACTION

1. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001, *et seq.* ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §1381-1453 ("MPPAA"). Pursuant to section 4221 of

ERISA, 29 U.S.C. §1401, Plaintiffs seek an order vacating and/or modifying an arbitration award issued by Arbitrator Adam P. Segal on September 17, 2019 in the arbitration proceeding, *In the Matter of the Arbitration Between Tricounty Excavation, Inc. and Tri-County Grading & Paving, Inc. vs. Pension Plan for the Pension Trust Fund for Operating Engineers*, Arbitration No. 01-18-0000-6451. A true and correct copy of the Arbitration Award is attached hereto as Exhibit A. The arbitration award at issue concerned disputes between Plaintiffs and Defendants Tricounty Excavation, Inc. and Tri-County Grading & Paving, Inc. over the assessment of withdrawal liability in the amount of $3,424,715.00. Plaintiffs determined that Tri-County Grading & Paving, Inc. had a complete withdrawal in or about April 2015 when it ceased its construction operations. Plaintiffs also determined that Tricounty Excavation, Inc. is Tri-County Grading & Paving Inc.'s successor for purposes of withdrawal liability because of the substantial continuity of business between the two companies.

**PARTIES**

2.      The Plan is an employee benefit plan as defined in ERISA §3(3), 29 U.S.C. §1002(3), an "employee benefit pension plan" as defined in of ERISA §3(2), 29 U.S.C. §1002(2); and a "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3), 29 U.S.C. §§1002(37) and 1301(a)(3). The Plan is jointly administered and is maintained pursuant to the Labor Management Relations Act §302(c), 29 U.S.C. §186(c). The Plan is administered in in Alameda, California, within this District.

3.      Plaintiffs James E. Murray and Dan Reding are members of the Board of Trustees of Plan, the "plan sponsor" within the meaning of ERISA §§3(16)(B)(iii) and 4001(a)(10)(A), 29 U.S.C. §§1002(16)(B)(iii) and 1301(a)(10)(A). They are therefore, fiduciaries of the Plan under ERISA §§3(21)(A) and 402(a), 29 U.S.C. §1002(a). As Trustees of the Plan, they are empowered to bring this action on behalf of the Plan pursuant to ERISA §4301(a)(1) - (b) and §502(a)(3), 29 U.S.C. §§1132(a)(3) and 1451(a)(1) - (b).

4.      Defendant Tri-County Grading & Paving, Inc. ("TCGP") is a California corporation with its principal place of business at 1200 Sunnyside, Clovis, California 93611. Defendant TCGP

is an employer within the meaning of ERISA §3(5), 29 U.S.C. §1002(5) and National Labor Relations Act ("NLRA") §2(2), 29 U.S.C. §152(2), and is engaged in an industry affecting commerce within the meaning of ERISA §§3(11) and (12), 29 U.S.C. §§1002(11) and (12).

5.     Defendant Tricounty Excavation, Inc. ("TCE") is a California corporation with an active general engineering contractor's license with its principal place of business at 635 Barstow, Ste. 6, Clovis, California 93612.  Defendant TCE is an employer within the meaning of ERISA §3(5), 29 U.S.C. §1002(5) and National Labor Relations Act ("NLRA") §2(2), 29 U.S.C. §152(2), and is engaged in an industry affecting commerce within the meaning of ERISA §§3(11) and (12), 29 U.S.C. §§1002(11) and (12).

**JURISDICTION AND VENUE**

6.     Jurisdiction is conferred upon this Court pursuant to 29 U.S.C. §§1401(b)(2) and 1451. Additionally, this action arises under ERISA and MPPAA and this Court has jurisdiction over federal questions pursuant to 29 U.S.C. §1331.

7.     Venue is conferred upon this Court pursuant to 29 U.S.C. §§1401(b)(2) and 1451(d).

**FACTUAL ALLEGATIONS**

8.     Since 2008, the Plan has been certified as being in either "endangered" or "critical" status with regard to its funding status.  Pursuant to federal law, the Plan sends an "Annual Funding Notice" to all signatory employers and participants addressing its funding status.

9.     Since 2002, TCGP has been bound to successive collective bargaining agreements ("CBAs") with Operating Engineers Local 3 ("Union"), which obligated TCGP to, inter alia, make contributions to the Plan on behalf of its employees performing covered work.  Prior to April 2015, TCGP performed operations in the form of paving and grading work. TCGP employees performing covered work were primarily operating engineers performing paving and grading work.

10.    Robert Oliver and Deanna Wells owned TCGP, with Robert Oliver running the paving and grading operations.

11.    Robert Oliver hired his son, Darrin Oliver, to work for TCGP.  Darrin Oliver worked as a laborer, equipment operation, foreman and estimator for TCGP.

3

COMPLAINT
CASE NO.

12. In 2008, Darrin Oliver, with his brother Gary and step-brother Richard Wells, purchased ownership of TCGP from Robert Oliver and Deanna Wells through a stock purchase agreement. In his time as co-owner of TCGP, Darrin Oliver served as the company's Responsible Managing Officer ("RMO"), and ran TCGP's office operations.

13. In May 2013, Robert Oliver took back ownership of TCGP, claiming that Darrin Oliver and his partners had missed required payments under the purchase agreement. Darrin Oliver continued working for TCGP.

14. In 2014, Darrin Oliver formed his own company, TCE, with Gary Oliver, and has served as TCE's RMO. TCE began performing work in December 2014. TCE performs grading and paving work, but is not signatory to any CBA with the Union or other agreement requiring contributions to the Plan.

15. Darrin Oliver hired 25 of the 32 employees that were employed by TCGP in late 2014 to work for TCE. As of April 2015, Darrin Oliver had hired all but four of TCGP's operating engineers to work for TCE.

16. Since its start in December 2014, TCE has been hired by several developers that previously hired TCGP. Of TCE's total 35 customers identified in the arbitration proceeding, 14 had been prior customers of TCGP.

17. Darrin Oliver hired Rebecca Nickles to provide bookkeeping services to TCE. Rebecca Nickles has been the office manager and corporate Secretary for TCGP since 2000.

18. Robert Oliver did not hire any new personnel to replace the ones that left to work for Darrin Oliver at TCE, and stopped bidding for construction work because TCGP ceased paving and grading operations in or around April 2015. TCGP finished up projects that TCGP was contractually obligated to complete. TCGP shifted its business from grading and paving work to equipment rental after Darrin Oliver left TCGP to start TCE, with TCE being TCGP's primary rental customer.

19. Robert Oliver continued to keep TCGP in business despite serious health issues, and has stated his intention to close the company as soon as this dispute is concluded.

20. After it essentially transferred its grading and paving operations to non-signatory TCE in April 2015, TCGP continued to make periodic contributions to the Plan under its CBAs, primarily for work such as maintaining its construction equipment, performing small patching or touch-up work on pre-existing construction projects, or providing an operating engineer with its equipment rental.

21. On July 12, 2016, the Plan assessed withdrawal liability against TCGP and TCE for a partial withdrawal in October 2014 in the amount of $2,771,979.00.  The Plan determined that there was a partial cessation withdrawal because TCGP continued to perform covered work through its non-signatory successor, TCE, and TCGP transferred work to TCE, an entity under common control though not common ownership.

22. TCGP and TCE requested review on October 10, 2016, and the Plan reaffirmed its assessment of partial withdrawal against both companies on December 8, 2017.

23. On February 5, 2019, the Plan revised its assessment of withdrawal liability, replacing the 2014 partial assessment with an assessment of withdrawal liability against TCGP and TCE for TCGP's complete withdrawal in or about April 2015, in the amount of $3,424,715.00.  The Plan determined that TCGP had completely ceased its grading and paving operations in 2015, and its periodic contributions under its CBAs since April 2015 should be disregarded under the ERISA evade or avoid statute as they were transactions with a principal purpose to evade or avoid withdrawal liability.

24. TCGP and TCE initiated arbitration on January 31, 2018, asserting that the Plan had improperly determined that TCGP had a complete withdrawal in 2015 and that TCE was TCGP's successor.

25. After the parties conducted discovery and a two-day hearing in Fresno, California, Arbitrator Adam P. Segal issued and served his ruling on September 17, 2019.  The ruling held in part:

- TCGP is not subject to complete withdrawal liability because it continues to contribute under its CBAs.  TCGP's unilateral decision to stay open as a business is

not a "transaction" that might be disregarded under the ERISA evade or avoid statute despite its intentions to evade or avoid withdrawal liability because TCGP took no affirmative actions by continuing its business.

- Even though there is sufficient continuity of business between TCGP and TCE to satisfy the 9th Circuit successorship test, and the facts demonstrate that Darrin Oliver/TCE had notice of TCGP's withdrawal liability, TCE is not TCGP's successor because there was no transfer or sale of assets on which to base successor liability.

**FIRST CAUSE OF ACTION**
**Vacate or Modify the Arbitration Award with Respect to the Determinations on Tri-County's Complete Withdrawal and Successor Liability As To Tri-County Grading & Paving and Tricounty Excavation**

26. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 25, above.

27. The Arbitration Award issued by Arbitrator Adam P. Segal on September 17, 2019, should be vacated or modified as to the following two issues, for the following reasons:

a. The Arbitration Award is contrary to and not in accordance with applicable law, as TCGP is subject to complete withdrawal liability under ERISA as of April 2015 when it ceased its grading and paving operations. ERISA provides that transactions with a principal purpose to evade or avoid withdrawal liability must be disregarded pursuant to 29 U.S.C. §1392. TCGP's periodic contributions to the Plan since it ceased its grading and paving operations are transactions that must be disregarded because they satisfy the requirements of 29 U.S.C. §1392. It was error for the arbitrator to conclude that TCGP did not have a complete withdrawal as of April 2015 for withdrawal liability purposes, and the award should be vacated or modified as to this conclusion as a matter of law.

b. The Arbitration Award is contrary to and not in accordance with applicable law as to TCE's status as TCGP's successor for withdrawal liability purposes. The arbitrator found that the Plan had satisfied the test stated by the Ninth Circuit in *Resilient Floor Covering Pension Trust Fund Board of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079 (9th Cir. 2015) for

6

COMPLAINT
CASE NO.

successor liability. Specifically, the arbitrator found that there was a substantial continuity of business operations between TCGP and TCE. The arbitrator further found that Darrin Oliver had at least constructive notice, if not actual notice, of TCGP's withdrawal liability. It was error for the arbitrator hold that TCE is not TCGP's successor because there was no sale or transfer of assets in that the arbitrator improperly added a further requirement for a finding of successor liability under ERISA, and the award should be vacated or modified as to this conclusion as a matter of law. Successor liability factors are to be considered as a whole and no one factor is controlling.

28. As a result of Arbitrator Adam P. Segal's Opinion and Award, Plaintiffs are adversely affected and damaged by virtue of the erroneous rulings that found that TCGP and TCE are not liable for the withdrawal liability in the amount of $3,424,715.00.

**PRAYER**

WHEREFORE, Plaintiffs respectfully request judgment in favor of Plaintiffs and against Defendants as follows:

1. For an order vacating or modifying the September 17, 2019 Arbitration Award with respect to the complete withdrawal of TCGP in or about April 2015, and the status of TCE as TCGP's successor for withdrawal liability purposes.

2. For an order that Defendants are jointly directed to make payment for the assessed completed withdrawal liability of $3,424,715.00.

3. For an award of attorneys' fees, costs and other expenses incurred by Plaintiffs in connection with this action pursuant to 29 U.S.C. §1451(e); and

4. Such other relief, legal or equitable, as the Court deems just and proper.

Dated: October 16, 2019                      SALTZMAN & JOHNSON
                                             LAW CORPORATION


                                             By:  /S/ Tino X. Do
                                                  Tino X. Do
                                                  Attorneys for Plaintiffs, Pension Plan for
                                                  Pension Trust Fund for Operating Engineers, et al.

7

COMPLAINT
CASE NO.